UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE LEE JETMORE STODDARD-NUNEZ, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>CITY OF HAYWARD, et al.,<br><br>      Defendants. | Case No.: 3:13-cv-4490 KAW<br><br>ORDER REGARDING DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, STAY THE ACTION, AND FOR A MORE DEFINITE STATEMENT |

On October 23, 2013, Defendants filed a motion to dismiss, or alternatively, stay the action pending non-party Arthur Pakman's criminal prosecution for decedent Shawn Joseph Jetmore Stoddard-Nunez's murder. (Mot. to Dismiss, Dkt. No. 8.) On December 5, 2013, the Court held a hearing, and after careful consideration of the parties' arguments, for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART both the motion to dismiss and the motion to stay, and GRANTS the motion for a more definite statement.

## I.      BACKGROUND

### A.      Factual background

On March 3, 2013, at approximately 3:20 a.m., City of Hayward Police Officer Manuel Troche ("Troche") was on patrol in his police cruiser in Hayward, California. (Compl. ¶ 10, Dkt. No. 1.) Russell McLeod ("McLeod") was Officer Troche's civilian ride along. *(Id.)* Officer Troche was traveling on Foothill Boulevard when he noticed a maroon Honda Civic moving erratically. *(Id.* ¶¶ 10, 11.) Shawn Joseph Jetmore Stoddard-Nunez ("Shawn") was sitting in the front passenger seat of the Honda Civic. *(Id.)*

Officer Troche suspected that the driver, Arthur Pakman ("Pakman"), was operating the vehicle while under the influence and attempted to initiate a traffic stop. *(Id.* ¶¶ 10, 12.) He accelerated to catch-up to the Honda, but he did not activate the patrol car's siren or flashing lights

to alert Pakman that he was being pulled over. (*Id.* ¶ 11.) Apparently unaware of Officer Troche's presence, Pakman continued to drive. (*Id.*) He made a right turn and reached a cul-de-sac surrounded by several apartment buildings. (*Id.*) He traveled the length of the cul-de-sac, made another right turn into an empty parking lot, and stopped the vehicle. (*Id.*)

Officer Troche parked his patrol car at the parking lot's entrance. (*Id.* ¶ 13.) He shined the patrol car's spot light in the direction of the Honda Civic, allegedly blinding Pakman and Shawn. (*Id.*) McLeod exited the patrol car and stood outside the passenger side of the police cruiser. (*Id.*) Officer Troche drew his firearm and began giving commands. (*Id.* ¶ 14.) Pakman then backed out of his parking space, steered the vehicle toward the parking lot's entrance, and began driving forward, apparently with the goal of maneuvering the Honda between Officer Troche's patrol car and a pole located at the entryway to the parking lot. (*Id.* ¶ 15.)

At that point, Officer Troche discharged his service weapon, firing nine rounds into the Honda as the vehicle moved passed his patrol car and into the street. (*Id.* ¶ 16.) One of those rounds struck Shawn. (*Id.*) Shawn died as a result of his injuries. (*Id.*) Pakman, who was operating the Honda at the time of the shooting, is awaiting trial on criminal charges. (Brick Decl., Dkt. No. 10, Ex. 2.)[1] Pakman is charged with Shawn's murder, two counts of assault with a deadly weapon, and two counts of felony driving under the influence. (*Id.*) According to Plaintiff, Pakman is being charged with murder under a provocative act theory. (Opp'n at 9.)

### B. Procedural background

On September 27, 2013, Jessie Lee Jetmore Stoddard-Nunez ("Plaintiff"), Shawn's brother, commenced this action against the City of Hayward and Officer Manuel Troche ("Defendants") as Shawn's successor-in-interest and personal representative of his estate. (Compl. ¶¶ 3-6.) Plaintiff asserts six causes of action: (1) a claim under 42 U.S.C. § 1983 against

---

[1] Upon Defendants' request, the court takes judicial notice of the existence of the Clerk's Docket and Minutes dated October 8, 2013, the Conformed Criminal Complaint, and the offenses listed in the charging document. FED. R. CIV. P. 201; *see Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). To the extent that Defendants' seek judicial notice of an April 5, 2013 news article for the facts and conditions surrounding Pakman's arrest and impending trial, the request is denied. *See* FED. R. CIV. P. 201.

2

Officer Troche for using excessive force in violation of the Fourth Amendment; (2) a claim under § 1983 against Officer Troche for wrongful death; (3) a claim under § 1983 against Officer Troche for violating the right to familial relationships; (4) a § 1983 claim based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978) against the City for an alleged failure to train, tantamount to a policy, custom, and long-standing practice of condoning and encouraging the abuse of police authority and disregard for constitutional rights; (5) a state law claim for wrongful death against Officer Troche; and (6) state law claims for assault and battery against Officer Troche. (Compl. ¶¶ 6-8, 10.)

On October 23, 2013, Defendants filed a motion to dismiss, or alternatively, stay the action. They assert that this matter should be stayed until the conclusion of Pakman's pending criminal prosecution; that Plaintiff lacks standing to bring a survivor action; that Officer Troche enjoys immunity from liability for Plaintiff's state law claims; and that Plaintiff has failed to state sufficient facts to constitute a cause of action for assault. (*Id.* at 4, 5, 6.) Defendants also move for a more definite statement on the grounds that Plaintiff did not plead assault and battery as separate causes of action. (*Id.* at 12.)

## II. DISCUSSION

**A.  The court grants, in part, Defendants' motion for a stay pending the resolution of the underlying criminal proceedings.**

1.  <u>Defendants have established that *Younger* abstention is appropriate in this case.</u>

*Younger* abstention is appropriate where (1) there are ongoing state judicial proceedings, (2) those proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Once these three threshold elements are met, a court may properly abstain "if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) (citation and footnote omitted).

Defendants contend that the requirements for *Younger* abstention are met in this case, warranting a stay in this civil case pending resolution of the underlying criminal proceedings. (Mot. to Dismiss at 7, 8, 9.) The court agrees.

Defendants rely on *Quesada v. City of Antioch*, No. C 08-1567 JL, 2008 WL 4104339 (N.D. Cal. Aug. 29, 2008), in support of their motion for a stay. In *Quesada*, six plaintiffs brought claims for excessive force and wrongful arrest. *Id.* at *1. One plaintiff faced criminal charges for resisting arrest in violation of California Penal Code sections 69 and 148(a)(1). *Id.* Two other plaintiffs were charged with violations Penal Code section 148(a)(1). *Id.*

The district court stayed the action pending resolution of the criminal proceedings. *Id.* It determined that the elements for *Younger* abstention had been met. *Id.* First, there were ongoing criminal proceedings against three of the named plaintiffs. *Id.* (citation omitted). Second, those proceedings, being criminal in nature, implicated important state interests, namely California's interest in prosecuting state criminal laws free from federal interference. *Id.* (citing *Juidice v. Vail*, 430 U.S. 327, 334 (1977)). Third, the state court proceedings provided an adequate opportunity to address the federal questions at issue in the civil case. *Id.* Specifically, the court reasoned that because the three plaintiffs were charged with resisting arrest, they could defend against those charges by introducing "evidence that the officers unlawfully arrested them and/or used unreasonable or excessive force to effect those arrests." *Id.*

*Quesada* is instructive with respect to the first three elements of *Younger* abstention. Here, there are ongoing state criminal proceedings, i.e., Pakman's criminal prosecution. Those criminal proceedings implicate important state interests, specifically the state's interest in prosecuting state criminal laws free of federal interference. In addition, those criminal proceedings will address the federal questions raised in this case. While those proceedings involve Pakman, not Shawn, the issues of Pakman's criminal liability for Shawn's murder, assault with a deadly weapon, and felony DUI will necessarily resolve whether Officer Troche was justified, and thus acted reasonably, during the events giving rise to this civil case.

The applicable criminal statutes and related jury instructions reflect the unavoidable overlap between the issues in the criminal proceedings and this civil action. California Penal

4

Code section 187(a)(1) defines murder as "the unlawful killing of a human being, or a fetus, with malice aforethought."  The jury instruction on provocative act murder states: "[a] person can be guilty of murder under the provocative act doctrine even if someone else did the actual killing."  CALCRIM No. 560.  That jury instruction lists the elements of the offense as follows:  (1)  in committing or attempting to commit the underlying crime, the defendant intentionally did a provocative act; (2) defendant knew that the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life; (3) in response to defendant's provocative act, a third party killed the decedent; and (4) the decedent's death was the natural and probable consequence of the defendant's provocative act.  *Id.*  While a provocative act is generally one that goes beyond that which is required to commit the underlying felony, assault with a deadly weapon may, on its own, be a provocative act because it demonstrates either express or implied malice.  *Id.*

     A determination that Pakman, in fact, committed a provocative act by driving the Honda Civic at Officer Troche and his civilian ride along will essentially resolve the issue of whether Officer Troche fired at the vehicle in response to this provocative act.  That, in turn, will necessarily determine whether the shots Officer Troche fired were merely an ancillary, rather than an actual, cause of Shawn's death.  In such case, the criminal proceedings will resolve the central issue in this civil case, as Officer Troche would have been justified, and thus would have acted reasonably, in shooting at a vehicle being driven directly at him and his civilian ride along by a defendant acting with a conscious disregard for human life.  Conversely, if the jury finds Pakman did not commit a provocative act by driving the car at Officer Troche and his civilian ride along, then Officer Troche's conduct would not have occurred in response to any alleged provocative act and his shooting at the vehicle, rather than Pakman's provocative act, would be the actual, as opposed to an ancillary, cause of Shawn's death.  It would follow then, that Officer Troche's use of force was unreasonable under the circumstances, i.e., if he merely shot into a fleeing vehicle.

     This same analysis applies to the assault with a deadly weapon charges Pakman faces in the criminal proceedings.  California Penal Code section 245, subdivision (a)(1) provides:

> Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

CALCRIM No. 875 outlines the elements for the offense. That jury instruction lists the elements of the offense as follows: (1) the defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; (2) the defendant did that act willfully; (3) when the defendant acted, he was aware of the facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; (4) when the defendant acted, he had the present ability to apply force likely to produce great bodily injury with a deadly weapon other than a firearm to a person; and (5) the defendant did not act in self-defense or in defense of someone else.[2] CALCRIM No. 875. Here, then, a determination by the jury that Pakman did in fact assault Officer Troche or his civilian ride along with a deadly weapon, i.e., the Honda Civic, would also resolve the issue of whether Officer Troche fired at the vehicle in response to that assault, essentially establishing that his conduct was justified and thus reasonable.

In light of the relevant statutes and applicable jury instructions, the court agrees with Defendants' assertion that "[t]he issue of whether the force used was reasonable will certainly be fully litigated by the defense relating to the charges of murder and felony assault." *See* (Mot. to Dismiss at 8.) As discussed above, "Pakman will have to argue that Officer Troche did not have a reason to open fire on his car" and "the prosecution will necessarily have to raise the [argument] that Officer Troche fired to defend himself and his passenger from the car which was being driven at them." (*See* Reply at 6, Dkt. No. 15.) Under these circumstances, any disposition in this civil case prior to the resolution of criminal proceedings may be at odds with the outcome of the criminal proceedings, and thus tantamount to interference with the criminal case. This implicates the policy underlying the doctrine of *Younger* abstention. *See Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) ("*Younger* principles apply to actions at law as well as for injunctive or

---

[2] Element 5 is given when instructing on self-defense or defense of another.

6

declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings.").

Accordingly, the court finds that all of the elements for *Younger* abstention are met in this case. A stay of these civil proceedings is therefore appropriate, subject to the allowances discussed below.

        2.    <u>Other considerations also warrant a stay in this action as well as a decision to permit limited discovery.</u>

Citing dictum found in *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007), Defendants offer an additional argument in support of their motion for a stay in this case. (*See* Mot. to Dismiss at 9.) In opposition, Plaintiff references other cases emanating from this district, in which the presiding judges permitted the actions to proceed subject to certain limitations on discovery. (*See* Opp'n at 10.) In light of the parties' arguments during the hearing, the court is persuaded that each party's respective position has merit.

In *Wallace*, the petitioner filed a § 1983 claim against the City of Chicago and several Chicago police officers, seeking damages for an alleged unlawful arrest. *Id.* at 387. The district court granted summary judgment in favor of the defendants. *Id.* On appeal, the Seventh Circuit affirmed, holding that the petitioner's suit was time-barred because his cause of action accrued at the time of his arrest, not when his conviction was set aside. *Id.* (citation omitted). The Court granted certiorari and concluded that the action was time-barred because the petitioner filed the action more than two years from the time "he appeared before the examining magistrate and was bound over for trial." *Id.* at 391-92. In resolving the issue, the Court noted: "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." 549 U.S. at 393-94 (*citing Heck v. Humphrey*, 512 U.S. 477, 487 n.8 (1994); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)).

The Court's similar guidance in *Heck* lends support to Defendants' position. 512 U.S. at 487 n.8. In that case, the Court held that a state prisoner's damages claims, which necessarily implied the invalidity of his conviction, could not be maintained under § 1983 absent a showing "that the conviction or sentence ha[d] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. In so holding, the Court went on to state: "[I]f a state criminal defendant brings a federal civil rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel proceedings." *Id.* at 487 (*citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

While neither party cites to the Ninth Circuit's decision in *Beets v. County of Los Angeles*, 669 F.3d 1038, 1040 (9th Cir. 2012), that opinion is more instructive here. There, two parents filed a § 1983 action, alleging that a sheriff's deputy used excessive force when he shot and killed their son. *Id.* Their son's accomplice was convicted on several counts, including aiding and abetting in the assault on a peace officer with a deadly weapon. *Id.* The district court dismissed the action because *Heck* precluded the plaintiffs from attempting to show that the sheriff's deputy used excessive force. *Id.* On appeal, the Ninth Circuit affirmed. *Id.* It reasoned that because the jury that convicted the accomplice had already determined that the deputy acted within the scope of his employment and did not use excessive force, a civil judgment in favor of plaintiffs would tend to undermine the accomplice's conviction. *Id.* The Ninth Circuit noted that the accomplice challenged the propriety of the deputy's actions in her criminal trial and that her interests in doing so were in no way inconsistent with the plaintiffs' interests. *Id.*

Though discovery in this case may ultimately reveal that *Beets* is factually distinguishable, the decision nonetheless illustrates that the concerns underlying the Court's dicta in *Wallace* and *Heck* may extend to situations where, as here, a plaintiff's civil action runs the risk of disturbing a related criminal proceeding, irrespective of whether the civil plaintiff, or some other party involved in underlying events, is the criminal defendant. *Beets*, 669 F.3d at 1040. Here, while it is Pakman, not Shawn, awaiting trial on criminal charges stemming from the same events giving

rise to this civil action, there is a significant overlap between the state court criminal action and the instant case.  As Defendants argue, to the extent that the state court proceedings resolve the issue of Pakman's liability for Shawn's murder under a provocative act theory, the matter of proximate causation will be addressed.  A key element to Pakman's defense will be challenging the propriety of Officer Troche's actions.  Pakman will argue that Officer Troche acted unreasonably when he shot at the Honda Civic nine times because Pakman was not driving the vehicle at him or his civilian ride along, and thus any reasonable officer would not have believed that Pakman was about to strike either of them with the car.  This would undermine the theory that Pakman provoked the shooting by driving the Honda Civic in the Officer Troche's direction.

As explained in Witkin, confusion over what constitutes a provocative act may be avoided if the term "provocative act murder" is reserved for intervening-act causation cases where, during commission of the crime, the intermediary (a police officer or crime victim) is provoked by the defendant's conduct into shooting back, resulting in someone's death. 1 WITKIN CAL. CRIM. LAW CRIMES – PERSONS § 170 (2010).  The California Supreme Court has similarly clarified the theory of provocative act murder:

> The traditional provocative act factual pattern is but a subset of those homicide cases in which death results through the acts of an intermediary.  In all homicide cases in which the conduct of an intermediary is the actual cause of death, the defendant's liability will depend on whether it can be demonstrated that his own conduct proximately caused the victim's death—i.e., whether it can be shown that the intermediary's conduct was merely a dependent intervening cause of death, and not an independent superseding cause.  If proximate causation is established, the defendant's level of culpability for the homicide in turn will vary in accordance with his criminal intent.

*People v. Cervantes*, 26 Cal. 4th 860, 873 n. 15 (2001).

In light of the above, any argument by Plaintiff that Officer Troche, not Pakman, was the proximate cause of Shawn's death, or that Officer Troche was or was not provoked by Pakman's conduct, would undermine the criminal proceedings on that issue.  The cases discussed above caution against that very scenario.  *Wallace*, 549 U.S. at 393-94; *Heck*, 512 U.S. at 487 n.8; *Beets*, 669 F.3d at 1040.  In addition, once the criminal matter has concluded, *Heck* may bar Plaintiff's suit, notwithstanding the fact that any resulting criminal conviction would lie against Pakman, not

9

Shawn. *See, e.g., Beets*, 669 F.3d at 1038. Conversely, if acquitted, Pakman may elect to bring his own civil action against Officer Troche and the City, subjecting Defendants to a duplicative lawsuits stemming from the same incident. A stay would thus be appropriate for these reasons.

Other reasons, however, also support a decision to allow limited discovery in this case pending the stay. During the hearing on Defendants' motion, Defendants argued that they would be disadvantaged by a decision to permit discovery because Pakman—a key witness—will undoubtedly assert his Fifth Amendment right against self-incrimination, preventing Defendants from obtaining crucial information. Plaintiff, however, persuasively argues that the prejudice it will suffer if discovery is not allowed outweighs any such disadvantage to Defendants. Specifically, Plaintiff is concerned about preserving percipient witness testimony in the event the parties are not permitted to conduct discovery until after the criminal proceedings have concluded. This concern is substantial, and it undermines Defendants' position that discovery should not be permitted. True, Pakman will be an unavailable witness while he awaits trial, but he will be unavailable to both Defendants and Plaintiff. Other witnesses, will be equally available, or unavailable as the case may be, to both parties in this case, and the court is not persuaded that Defendants should be spared the inconvenience of conducting discovery because a key eye witness is unavailable at the expense of risking the preservation of all other potential evidence in this case.

For these reasons, the court will stay the action but permit limited discovery to proceed. The parties may propound written discovery and conduct depositions of percipient witnesses, excluding Officer Troche and Pakman. The parties may present any discovery disputes that might arise in joint letter format, consistent with the court's standing order, available at http://www.cand.uscourts.gov/kaworders. The parties shall file a joint case management statement that includes, among other required content, an update on the status of related criminal proceedings 7 days before the case management conference currently scheduled for April 8, 2014. Given that the parties will engage in limited discovery, the court addresses the merits of the Defendants' motion to dismiss and request for a more definite statement below.

///

**B.       The court grants, in part, Defendants' motion to dismiss without prejudice.**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured

11

by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

Defendants move to dismiss the complaint on three separate grounds. (Mot. to Dismiss at 4, 5, 6.) First, Defendants argue that Plaintiff lacks standing to sue as Shawn's successor-in-interest because he has not filed the declaration required under California Code of Civil Procedure section 377.32. (*Id.* at 4, 5.) Second, Defendants assert that Officer Troche enjoys immunity from liability for the fifth cause of action for wrongful death and the sixth cause of action for assault and battery. (*Id.* at 5.) Third, Defendants contend that Plaintiff has failed to plead sufficient facts to constitute a cause of action for assault. (*Id.* at 6.) The court addresses each of these arguments in turn.

1. <u>Plaintiff has not established standing to sue as Shawn's successor-in-interest.</u>

Defendants challenge Plaintiff's standing to sue as Shawn's successor-in-interest based on Plaintiff's failure to comply with the application declaration requirement. (Mot. to Dismiss at 4, 5.)

California Code of Civil Procedure section 377.32 requires that "[t]he person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest . . . shall execute and file an affidavit or a declaration under penalty of perjury[,]" showing, among other things, that he is the decedent's successor-in-interest or authorized to act on that person's behalf.

Plaintiff concedes that he has not filed the required declaration. (Opp'n at 7.) Plaintiff also correctly argues that this defect may be cured by promptly filing the required declaration. (*Id.*) Accordingly, Plaintiff shall file the required declaration within 14 days of this order.

2. <u>Immunity does not bar Plaintiff's state law claims for wrongful death, assault, and battery.</u>

As a preliminary matter, the court finds that the resolution of the statutory immunities issue is not appropriate at this stage. As discussed below, the allegations in the complaint, taken as true, establish that Officer Troche engaged in conduct falling outside the scope of both section 820.2 and section 820.4. This prevents Defendants from making the requisite showing that

Officer Troche is immune from liability because the conduct complained of is the type of conduct contemplated by those provisions. Further factual development is necessary to determine whether Officer Troche's conduct may be appropriately characterized as self-defense, justifiable homicide, or some other variant of reasonable conduct. As such, this is an issue best suited for resolution at the summary judgment stage, not the pleading stage. *See Curtis v. Rodriguez*, 89 F. Supp. 2d 1131, 1138 (N.D. Cal. 2000) ("[B]ecause Plaintiffs' allegations in the present case are broad enough to encompass conduct not within the scope of the cited immunity provisions, the [c]ourt cannot resolve at the pleading stage the issue of whether any or all of the immunities bar Plaintiff's claims.") (citation and footnote omitted). The analysis below illustrates this.

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." CAL. GOV'T CODE § 820.2.

Defendants argue that the acts giving rise to Plaintiffs' claims for wrongful death, assault, and battery are discretionary acts within the meaning of section 820.2. (Mot. to Dismiss at 6.) On that basis, they assert that Officer Troche is immune from liability for these claims, which warrants dismissal of the claims with prejudice. (*Id.* at 6.) In support of their argument, Defendants cite *Reynolds v. County of San Diego*, 858 F. Supp. 1064 (S.D. Cal. 1994) for the proposition that any decision to use force against a suspect falls within the ambit of section 820.2 because the provision insulates a public employee from liability "whether or not such discretion is abused." (Reply at 3.)

In *Reynolds*, a sheriff's deputy shot and killed a combative suspect, who was armed with a knife. 858 F. Supp. at 1066, 1067. As the deputy attempted to arrest the suspect, the suspect jerked to the side and made an upward motion with his arm, swinging the knife towards the deputy. *Id.* The deputy shot the suspect, who died of a single gunshot wound to the neck. *Id.* The suspect's wife and mother brought a § 1983 action against the county, the sheriff, and the deputy, asserting various federal and state law claims. *Id.* The defendants moved for summary judgment. *Id.* at 1066. The deputy argued that he enjoyed immunity from liability for the state law claims pursuant to section 820.2. *Id.* at 1074. The court, having determined that the deputy's

13

conduct was objectively reasonable, concluded that his actions were protected under section 820.2 and granted summary judgment on the plaintiffs' state law claims. *Id.* at 1075.

Defendants misread *Reynolds* as holding that any decision to use force falls within the ambit of section 820.2 because the statute protects a public employee for a discretionary act "whether or not such discretion is abused." To the contrary, the *Reynolds* court premised its conclusion that the deputy had acted within his discretion on the determination that the deputy's conduct was objectively reasonable. *Reynolds*, 858 F. Supp. 1075. Here, no such determination has been made nor can be made as this stage. In addition, Defendants' misreading of *Reynolds* ignores settled case law establishing that section 820.2 does not embrace discretionary acts that otherwise involve unreasonable conduct. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007) (defendant officers, relying on section 820.2, were not entitled to summary judgment on state law claims where there were genuine issues of material fact on the reasonableness of the officers' use of force); *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) ("California denies immunity to officers who use excessive force in arresting a suspect.") (citation omitted); *Nelson v. City of Davis*, 709 F. Supp. 2d 978, (E.D. Cal. 2010) (Discretionary immunity "does not protect tactical choices found to be unreasonable . . . . Nor does [it] provide protection against allegations that police officers used excessive force.") (citation omitted); *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349 (1996) (a police officer is entitled to immunity under section 820.2 if circumstances reasonably created fear of death or serious bodily harm to the officer or another); *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 266 (1967) (discretionary act immunity did not apply where officer used unreasonable, excessive, unwarranted, and unnecessary force to effect an arrest).

As the California Supreme Court has explained, "[C]lassification of the act of a public employee as 'discretionary' will not produce immunity under section 820.2 if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261 (1969) (police officer liable for negligent conduct during a traffic investigation even though decision to initiate the investigation was

14

discretionary). Here, then, even if Officer Troche's decision to use force by discharging his firearm was a discretionary act, his decision to, as the allegations in the complaint suggest, employ an unreasonable amount of force is not protected. Thus, the language on which Defendants rely, i.e., that the immunity applies "whether or not such discretion is abused," does not save Officer Troche from liability for injuries caused by the alleged unreasonable manner in which he executed the discretionary decision to use force.

The allegations in the complaint, taken as true, preclude any determination that Officer Troche executed his decision to use force reasonably. They establish that at the time Officer Troche fired nine shots into the Honda, Officer Troche had not alerted Pakman, by means of a siren or flashing lights, that he was initiating a traffic stop. (Compl. ¶ 11.) Pakman was thus unaware that an officer was pursuing him. (*Id.* ¶ 12.) Once the Honda had parked and Officer Troche drew is firearm and began giving commands, Pakman was blinded by the spot light on the police car. (*Id.* ¶¶ 13, 14.) When Pakman began driving the vehicle in Officer Troche's direction, he was attempting to maneuver the car between the police cruiser and the entryway to the parking lot where the vehicle had been parked. (*Id.* ¶ 15.) Pakman was not attempting to drive the Honda Civic at Officer Troche and his civilian ride along. (*See id.*) Still, as the car "cleared the police car and went out onto the street," Officer Troche decided to use force and proceeded to fire nine shots into Pakman's vehicle.

So taken, the allegations in the complaint establish that Officer Troche's actions would not be discretionary within the meaning of section 820.2. At this stage, then, dismissal on immunity grounds is not appropriate because Plaintiffs' allegations establish conduct that falls outside the scope of section 820.2. This outcome is consistent with applicable case law, which shows that immunity under section 820.2 turns on the reasonableness of the conduct complained of, not simply whether or not a public employee exercised his or her discretion. Thus, Defendants' argument that officers would always be immune from liability because shooting a suspect constitutes a discretionary act, whether or not such discretion is abused, is untenable and inconsistent with established law.

15

Defendant's argument for a dismissal with prejudice pursuant to section 820.4 fares no better. That provision immunizes a public employee from liability "for his act or omission, exercising due care, in the execution or enforcement of any law." CAL. GOV'T CODE 820.4. As discussed above, Plaintiff's allegations, taken as true, bring into question whether Officer Troche exercised due care during the events giving rise to this suit.

Accordingly, insofar as Defendants seek a dismissal of the state law claims with prejudice based on the statutory immunities discussed above, their motion is denied without prejudice to raise such defenses in a motion for summary judgment.

        3.      <u>Plaintiff has not adequately alleged an assault claim.</u>

Defendants alternatively seek dismissal of Plaintiff's assault claim on the grounds that he has not "state[d] facts sufficient to constitute a cause of action." (Mot. to Dismiss at 6.) Specifically, Defendants contend that the complaint does not contain any facts in support of the element of apprehension. *(Id.)* Defendants' position has merit.

To state a claim for assault, a plaintiff must allege that: (1) the defendant acted with intent to cause a harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed that he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out that threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant' conduct was a substantial factor in causing the plaintiff's harm. *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013). The essence of the intentional tort of assault is the apprehension of harmful or offensive contact. RESTATEMENT (SECOND) OF TORTS § 21. "The tort of assault is complete when the anticipation of harm occurs." *Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal. App. 3d 222, 232 (1983).

As a preliminary matter, federal courts have departed from the more stringent requirements of fact pleading and now apply the standards of notice pleading. *See Twombly*, 550 U.S. at 570. Therefore, to the extent that Defendants suggest Plaintiff has failed to plead facts sufficient to constitute a cause of action, the argument fails because it relies on the standard federal courts have discarded. Insofar as Defendants argue that Plaintiff has failed to state a claim

for relief that is plausible on its face, however, their position has merit, as the allegations in the complaint are insufficient as to the element of apprehension.

In his opposition, Plaintiff argues that the complaint contains allegations that Shawn "was sitting in the Honda's front passenger seat" and that "[Defendant] was on the passenger side of the Honda[,] effectively placing [Shawn] in the direct line of fire." (Opp'n at 8; Compl. ¶¶ 10, 16.) In the complaint, Plaintiff also alleges that [Defendant] fired nine shots in the Honda as it cleared the police car and went out onto the street" and that "[o]ne of the bullets proved fatal as it cut through the arteries in [Shawn's] neck causing [his] death." (Compl. ¶ 16.)

Plaintiff argues that these allegations support a reasonable inference of apprehension. *See Iqbal*, 556 U.S. at 678. He argues that taking the allegations as true, they establish that Shawn was sitting in the passenger side of the Honda, between Pakman, who was sitting in the driver seat, and Officer Troche, who was standing on the passenger side of the vehicle. (*See* Compl. ¶¶ 10, 16.) Plaintiff asserts that from that frame of reference, Shawn likely saw Officer Troche take aim at the vehicle, heard the sound of multiple rounds of ammunition being fired, and watched as bullets shattered windows before suffering gunshot wounds himself. While Plaintiff contends that these are reasonable inferences to draw from the allegations contained in the complaint, which would suggest that Shawn suffered apprehension of an imminent battery, the court finds that these additional assertions should be contained within the complaint itself, not in the opposition to the motion to dismiss.

Accordingly, Defendants' motion to dismiss is granted to the extent it challenges the sufficiency of the allegations in the complaint on the issue of apprehension. Plaintiff shall amend the complaint to correct the deficiency within 14 days of the date of this order.

### C. The court grants Defendants' motion for a more definite statement as unopposed.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(e) authorizes a motion for a more definite statement when the pleading at issue is "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).

17

The sole basis for Defendants' motion for a more definite statement is their contention that Plaintiff should separately plead their assault and battery claims. *(Id.)* In the complaint, Plaintiff pleads those claims together in the sixth cause of action. (Compl. at 11.) In their reply, Defendants correctly point out that Plaintiff does not address the motion for a more definite statement in his opposition. (Reply at 9.) During oral argument, Plaintiff did not object to pleading assault and battery as separate causes of action in the amended complaint. The court therefore grants the motion for a more definite statement as unopposed.

### III.   CONCLUSION

For the reasons set forth above, the court hereby orders as follows:

1. The court grants Defendants motion to stay the proceedings in part, subject to permitted limited discovery. As stated above, the parties may propound written discovery and conduct depositions of percipient witnesses, excluding Officer Troche and Pakman. No trial date or pretrial deadlines will be set pending the stay. The parties may present any discovery disputes that might arise in joint letter format, consistent with the court's standing order, available at http://www.cand.uscourts.gov/kaworders. The parties shall file a joint case management statement that includes an update on the status of related criminal proceedings 7 days before the case management conference currently scheduled for April 8, 2014.

2. The court grants Defendants' motion to dismiss in part and denies the motion in part. The motion is granted, with leave to amend, with respect to the wrongful death claim and the assault claim. The motion to dismiss is denied in all other respects.

3. The court grants Defendants' request for a more definite statement as unopposed.

Accordingly, Plaintiff shall file an amended complaint and the declaration required by California Code of Civil Procedure section 377.32 within 14 days of the date of this order.

IT IS SO ORDERED.

Dated: December 23, 2013

KANDIS A. WESTMORE
United States Magistrate Judge